IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCISCO AKINS, M24801, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. **3:14-cv-00525-JPG-PMF** |
| | ) |
| WEXFORD HEALTH | ) |
| SOURCES, INC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are the Defendants' Motions for Summary Judgment (Docs. 34, 41). The Defendants argue that the plaintiff failed to exhaust available administrative remedies prior to filing suit. Plaintiff filed Francisco Akins filed responses in opposition (Doc. 37, 45). Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 on May 8, 2014 claiming that various Illinois Department of Corrections ("IDOC") and Wexford Health Sources, Inc. ("Wexford") employees violated his constitutional rights. Following Judge Gilbert's 28 U.S.C. § 1915A merits review, Akins proceeds on the following claims:

> **Count 1:** Defendant C/O John Doe was deliberately indifferent to Plaintiff's need for medical attention immediately following Plaintiff's initial fall.
> **Count 2:** Defendant C/O Wills retaliated against plaintiff for filing grievances when he interfered with Plaintiff's ability to access medical care and sent Plaintiff to disciplinary segregation.
> **Count 3:** Defendants Shearing, Fuentes, Shepherd, and Wexford were deliberately indifferent to Plaintiff's need for medical care.

A *Pavey* evidentiary hearing was held on September 24, 2015 with the Akins in attendance from Menard Correctional Center via videoconference. See *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). For the following reasons it is RECOMMENDED that the Defendant C/O Wills'

1

Motion for Summary Judgment (Doc. 41) be GRANTED and the Wexford Defendants' Motion for Summary Judgment be DENIED. Further, during the *Pavey* hearing Akins notified the Court that Dr. Fuentes was erroneously included in his complaint and that he would like to voluntarily dismiss his claim against her. The Court therefore recommends that Akins' oral motion to voluntarily dismiss Dr. Fuentes be GRANTED and that Dr. Fuentes be dismissed from this case with prejudice.

Akins is a prisoner at Menard Correctional Center ("Menard") and the events that give rise to this litigation occurred at that facility. According to Akins' complaint, on the evening of August 23, 2012 Akins was on the top bunk in his cell at Menard. As he was getting down from the top bunk he slipped and fell onto the cell floor. In doing so he injured his foot and ankle. Akins' cellmate requested medical assistance from Defendant John Doe correctional officer but the correctional officer declined to help. Akins was left to lie on the floor for over an hour until help arrived. Defendant John Doe's failure to provide assistance forms the basis of Count 1 of Akins' complaint.

Akins was eventually transported by wheelchair to the Menard Health Care Unit ("HCU"). He was initially diagnosed with an ankle sprain but he was later told that he suffered a bone fracture with "possible bone fragments." According to the complaint, the injury never properly healed. As a result, he fell on two subsequent occasions in mid-2013 and exacerbated his condition. Akins' medical treatment following the August 23, 2012 fall forms the basis of Akins' deliberate indifference claim at Count 3 against Defendants Dr. Shearing, Dr. Fuentes, Dr. Shepherd, and Wexford.

Count 2 arises out of an event that occurred on December 7, 2012. On that date Akins was transported to the HCU for a medical examination. Akins was still in pain from the initial

fall and he was at the HCU for pain medication and to receive a renewal of his "feed in cell" permit. The feed in cell permit, as its name suggests, allows prisoners to have their meals delivered to their cells. Akins was waiting in the HCU holding area for approximately an hour when he got into an argument with Defendant C/O Wills. C/O Wills wrote Akins a disciplinary ticket and placed him in segregation. After reviewing the disciplinary ticket, the Adjustment Committee expunged the ticket and released Akins from segregation. Akins asserts that C/O Wills actions were in retaliation for past grievances Akins had filed.

Akins' grievance history is lengthy. On August 29, 2012 Akins submitted a grievance describing his August 12, 2012 fall from the top bunk. (Doc. 45-2, p. 2-3). The grievance states that after Akins fell from the top bunk Akins and his cellmate immediately requested assistance from an unnamed correctional officer. The unnamed C/O declined to help. Akins also mentioned in the grievance that he injured his ankle in the fall and that he was seen by an unnamed Menard HCU physician. The grievance requests additional medical treatment, medication, a low-bunk low gallery permit, and a slow walker permit. The John Doe defendant from Count 1 is mentioned in the grievance but no other defendants are identified. Akins' counselor responded to the grievance on September 13, 2012. Akins states that after his counselor responded to the grievance, he placed the grievance in his cell bars so that it would be delivered to the Menard grievance office. (Doc. 45-1, p. 9). After placing the grievance in his cell bars Akins received no further response.

Akins submitted a follow up grievance on September 23, 2012. The grievance mentions that Akins continues to have ankle problems and it reiterates his requests for a low bunk permit and slow walker permit. (Doc. 45-2, p. 5). Akins states that after submitting the grievance he never received a response from his counselor. (Doc. 45-1, p. 9). Akins sent a letter to the

grievance officer on December 5, 2012 addressing the lack of responses, but the grievance officer did not respond to the letter. (Doc. 45-1, p. 9, Doc. 45-2, p. 7). In his response to the Wexford defendants' motion for summary judgment, Akins mentions that he will generally receive responses to his grievances unless the grievances describe staff misconduct or improper medical treatment. *Id.*

On January 30, 2013 Akins sent a letter to the IDOC Administrative Review Board ("ARB") describing his attempts to complete the grievance process and Akins attached the two grievances. The letter to the ARB also mentions the December 7, 2012 C/O Wills incident (although C/O Wills is not specifically named). (Doc. 45-2, p. 8). On February 28, 2013 the ARB denied the grievances due to a lack of response from the Menard Warden and grievance officer. (Doc. 45-3, p. 1).

On March 17, 2013 Akins submitted another grievance concerning his medical treatment. (Doc. 45-3, p. 2). The grievance states that he is not receiving proper medical treatment and it mentions defendants Dr. Shepherd and Dr. Fuentes. It also mentions the December 7, 2012 incident. Akins never received a response to the grievance.

Akins submitted a fourth grievance describing his medical issues on June 23, 2013. (Doc. 45-2, p. 11). The grievance states that he is not receive proper treatment from the Menard HCU and that he would like to avoid being treated by Dr. Shearing. (Doc. 45-3, p. 11). It was submitted as an emergency grievance and was stamped "received" on September 25, 2013. The Warden denied the grievance on September 25, 2013 and directed Akins to resubmit the grievance through the normal non-emergency procedures. Akins resubmitted the grievance through normal non-emergency procedures but he never received a response. Akins then submitted the grievance directly to the ARB in January, 2014. The ARB denied the grievance

4

because it lacked the counselor and grievance officer's response, and also because it was untimely. (Doc. 45-3, p. 14). Several months later on May 8, 2014 Akins filed this lawsuit. (Doc. 1).

The defendant now seeks summary judgment on the basis that the plaintiff failed to exhaust administrative remedies prior to filing suit. Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). If the Court determines that there is a genuine dispute of material fact as to whether a prisoner plaintiff exhausted administrative remedies, the Court is obligated to hold a *Pavey* evidentiary hearing. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Failure to exhaust is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and the *Pavey* hearing allows the judge to make a finding of whether the plaintiff properly exhausted. *Pavey*, 544 F.3d at 742.

Inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before filing a lawsuit. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Inmates must follow all grievance rules established by the correctional authority. *Id*.

For non-emergency grievances, the Illinois Department of Corrections ("IDOC") has a three-step process that prisoners are required to follow in order to exhaust administrative remedies. At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.

At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the prison Grievance Officer within sixty (60) days

of discovery of the dispute. *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Warden (also known as the Chief Administrative Officer or "CAO"). *See* 20 Ill.Admin.Code § 504.830.

The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. 20 Ill.Admin.Code § 504.850. The Director of IDOC and the ARB are required to make a "final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id*. Administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

The process for emergency grievances is slightly different. Emergency grievances are forwarded directly to the Warden, and "if the [Warden] determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." 20 Ill. Admin. Code § 504.840. If the CAO makes a determination that the grievance is not of an emergency nature the plaintiff may appeal the CAO's decision directly to the ARB. *Id.*, *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.2005). The plaintiff is not required to resubmit an emergency grievance through the normal non-emergency process. *See Thornton*, 428 F.3d at 694; *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("In *Thornton* … we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary.").

The first issue here is whether Akins did in fact properly exhaust the grievances from August 29, 2012, September 23, 2012, March 17, 2013 and June 23, 2013. Akins stated at the

6

*Pavey* hearing and in his pleadings that he submitted all four of the grievances through the proper channels. The August 29, 2012 grievance does include a counselor's response but Akins stated that he did not receive a response when he submitted to the grievance officer. The June 23, 2013 emergency grievance includes a denial from the Warden. However Akins stated that he did not receive a response when he resubmitted it through the normal non-emergency process.

When taken as a whole, Akins' filings and his testimony at the hearing demonstrate a credible attempt to exhaust administrative remedies. Akins testified that he submitted his grievances by placing them in an envelope in his cell bars. The grievances were then picked up by a correctional officer. When Akins did not receive a response to his grievances he followed up with the grievance office and with the ARB. The Seventh Circuit case law is clear that "prison officials may not take unfair advantage of the exhaustion requirement … and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Here, Akins provided credible testimony that he properly submitted the four grievances but Menard administration failed to respond. The grievance process was therefore unavailable to him.

Although the administrative remedies process was unavailable to *Akins*, the issue still remains as to whether his submitted grievances included the necessary particularity. IDOC regulations mandate that:

> [a] grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not

7

>known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(a). The aforementioned regulation was promulgated in 2003. *See* 27 Ill. Reg. § 6214 (amending § 504.810). "Prior to 2003, a grievance sufficed simply by 'object[ing] intelligently to some asserted shortcoming.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir.2005)).

Complicating matters is the fact that Akins' four grievances were drafted on an older style grievance form that only requires "a brief summary of grievance." The grievance forms Akins used do not require that inmates identify the individuals subject to the complaint. The grievance forms direct inmates to provide a brief summary of their grievance and Akins did just that. Akins' August 2012 grievance and the two grievances from 2013 mention that he is having problems due to his foot injury and that he would like additional medical treatment. Akins thus provided a "brief summary" of his issues pertaining to Defendants Dr. Shearing, Dr. Fuentes, and Dr. Shepherd.

The connection between his grievances and the claim against Wexford corporate is a bit more tenuous. Ignoring the exhaustion issue for a moment, in order for Akins to establish an Eighth Amendment deliberate indifference claim against Wexford he must "offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." S*hields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) cert. denied, 135 S. Ct. 1024, 190 L. Ed. 2d 832 (2015). Out of Akins' four grievances "Wexford" is mentioned only once; in the June 23, 2013 grievance. Akins' grievances do however describe a series of allegedly bad acts taken by the Wexford employees at the Menard HCU. Keeping in mind that Akins used the older

"brief summary" grievance form, Akins' grievances are sufficient detailed to exhaust his claim against Wexford.

The next issue is whether Akins exhausted administrative remedies against C/O Wills. The Court finds that Akins did not. The C/O Wills incident occurred on December 7, 2012. Akins first filed a grievance concerning this issue on March 17, 2013. Pursuant to IDOC regulations grievances must be filed within 60 days "after the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 Ill.Admin.Code § 504.810(a). The grievance is therefore past the 60 day window and it is untimely. At the *Pavey* hearing Akins stated that he delayed filing the grievance because he was trying to investigate other information to include in the grievance. Despite his justification for the delay, Akins was not precluded from filing separate grievances. Thus, C/O Wills' motion for summary judgment should be granted.

The last issue is Akins' request for voluntary dismissal of Dr. Fuentes. During the *Pavey* hearing Akins notified the Court that Dr. Fuentes was erroneously included in his complaint. Akins stated that Dr. Fuentes provided good medical care and that he would like to voluntarily dismiss his claim against her. The Court therefore recommends that Akins' oral motion to voluntarily dismiss Dr. Fuentes be granted and that Dr. Fuentes be dismissed from this case with prejudice.

## RECOMMENDATIONS

It is RECOMMENDED that the Motion for Summary Judgment filed by C/O Wills (Doc. 34) be GRANTED and the Motion for Summary Judgment filed by Dr. Shearing, Dr. Fuentes, Dr. Shepherd and Wexford (Doc. 41) be denied. It is also recommended that Dr. Fuentes be dismissed from this case with prejudice.

**SO RECOMMENDED.**

**DATED:  September 29, 2015 .**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**