# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRANCISCO AKINS,  )
)
                Plaintiff,  )
)
   v.  )   Case No. 14-CV-525-SMY-RJD
)
WEXFORD HEALTH SOURCES, INC.,  )
et al.,  )
)
                Defendants.  )

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Before the Court is Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. John Shepherd and Dr. Robert Shearing's Motion for Summary Judgment (Doc. 59). Plaintiff Francisco Akins, an inmate with the Illinois Department of Corrections filed this action against these defendants and others on May 8, 2014, alleging violations of his constitutional rights in relation to medical treatment he received for his right ankle while he was incarcerated at Menard Correctional Center ("Menard") (Doc. 1). On November 24, 2015, the Court dismissed Defendant Wills based on Plaintiff's failure to exhaust administrative remedies, and Plaintiff voluntarily dismissed Defendant Fuentes (Doc. 55). Plaintiff has proceeded on the following claims:

> **Count 1:** Defendant John Doe, a correctional officer, violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's injuries caused by falling on August 23, 2012;
>
> **Count 3:** Defendants Wexford Health Sources, Shepherd, and Shearing violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's need for medical treatment in relation to his right ankle.

(Docs, 1, 6.)

Defendants Wexford, Shepherd and Shearing move for summary judgment on Count 3. For the following reasons, Defendants' motion (Doc. 59) is **GRANTED**.

## BACKGROUND

From 2012 to July 17, 2016, Plaintiff was incarcerated at Menard (Doc. 60-1 at 4; Doc. 83). During this period, Defendant Wexford contracted with the Illinois Department of Corrections to provide medical services to inmates, including those incarcerated at Menard (Doc. 60-5). Defendant Shepherd worked as a physician with Wexford from 2001 to 2013 and last worked at Menard on October 26, 2012 (Doc. 102-2 at 5). Defendant Shearing worked as a physician at Menard from October 15, 2012, to November 16, 2013 (Doc. 60-4).

On the evening of August 23, 2012, Plaintiff fell injuring his right ankle and was taken to the medical unit. (Doc. 60-1 at 5-6; Doc. 60-3 at 1). Dr. Shepherd examined Plaintiff the following morning and assessed a right ankle sprain. (Doc. 60-3 at 3). He recommended a permit for a low bunk for two weeks, prescribed Motrin and ordered a right ankle X-ray. (*Id.*) He also recommended that Plaintiff tightly lace his ankle high leather boots for support as a substitute for an ankle brace. (*Id.*; Doc. 60-2 at 2.) Later that day, Dr. Shepherd again examined Plaintiff and diagnosed a right ankle strain or sprain. (Doc. 60-3 at 4.) He reviewed the right ankle X-ray and interpreted it as showing either an avulsion fracture or calcium deposits along the Achilles tendon. (*Id.*) Based on his observations and interpretation of the X-ray, Dr. Shepherd did not to refer Plaintiff to a specialist or for an MRI (Doc. 102-2 at 8.) Following the examination, Plaintiff did not receive the low bunk permit recommended by Dr. Shepherd. (Doc. 60-1 at 10.) Dr. Shepherd did not submit the order for the low bunk permit because he believed that a nurse would complete the form for the order. (Doc. 60-2 at 2; Doc. 102-2 at 7.) On

August 27, 2012, the radiologist interpreted the right ankle X-ray, finding no acute bony abnormality. (Doc. 60-2 at 2-3; Doc. 60-3 at 16.)

Dr. Shepherd examined Plaintiff again on September 27, 2012 and concluded that Plaintiff's ankle sprain/strain was slowly improving. (Doc. 60-3 at 8.) At that time, Plaintiff favored his right ankle as he walked and continued to complain of ankle pain. (*Id.*) Dr. Shepherd ordered right ankle X-rays, replaced the prescription for Motrin with Naproxen and recommended a follow up appointment in three weeks. (*Id.*) He concluded that the X-rays revealed a chronic fracture but no acute abnormality. (*Id.* at 18; Doc. 60-2 at 3-4.)

Dr. Shepherd next examined Plaintiff on October 19, 2012. At that time, Plaintiff complained that he could not bear weight on his right heel. (Doc. 60-3 at 9.) Dr. Shepherd diagnosed right ankle pain, replaced Plaintiff's prescription for Naproxen with Motrin at Plaintiff's request, ordered arch supports, two-week permit for food in cell and one-year permits for low bunk and slow walk and recommended a follow up appointment in one month. (*Id.*; Doc. 60-1 at 16.) Dr. Shepherd did not recommend an MRI (Doc. 102-2 at 10.) Also, Dr. Shepherd did not consider a referral for physical therapy because Plaintiff could perform range of motion exercises within the correctional facility. (*Id.*)

Plaintiff did not receive the arch supports Dr. Shephard recommended.[1] (Doc. 60-1 at 16.) Dr. Shepherd asserts that he ordered the arch supports but assumed that staff members would complete the order and did not follow up on it. (Doc. 102-2 at 11.) Dr. Shepard ordered another X-ray on Plaintiff's right ankle, which was taken on November 15, 2012. (Doc. 60-3 at 19.) The X-rays revealed no acute bony abnormality. (*Id.*) Dr. Shepard left his position at Menard on October 26, 2012. (Doc. 60-2 at 4.)

---

[1] Plaintiff also testified that he received the arch supports before his visit with Defendant Shearing on November 26, 2012, but this discrepancy is not material for purposes of this motion. (Doc. 60-1 at 19.)

3

On November 26, 2012, Dr. Shearing examined Plaintiff, reviewed the X-rays and diagnosed chronic right ankle pain, with no objective evidence of an ongoing injury. (Doc. 60-3 at 10.) He prescribed ibuprofen for pain and recommended that Plaintiff follow up as needed. (*Id.*)

On January 8, 2013, Dr. Fuentes ordered a six-month low gallery permit for Plaintiff. (Doc. 103-1 at 5.) He also ordered an X-ray of Plaintiff's right ankle on March 13, 2013, which revealed no acute bony abnormality. (Doc. 60-3 at 20.)

On May 20, 2013, Plaintiff fell due to his right ankle but did not see a physician. (Doc. 60-1 at 20.) He fell again on June 1, 2013. He was admitted to the infirmary and was prescribed Motrin. (Doc. 60-1 at 22; Doc. 60-3 at 11-12.) Dr. Shearing examined Plaintiff on June 3, 2013 and assessed a mild right ankle sprain. (Doc. 60-3 at 14.) He ordered right ankle X-rays to confirm the diagnosis. (*Id.*; Doc. 60-4 at 2-3.) The X-rays revealed no evidence of fractures or dislocation, and Dr. Shearing discharged Plaintiff from the infirmary.[2] (*Id.*; Doc. 60-3 at 21.)

On June 12, 2013, Plaintiff complained of right ankle pain to Dr. Shearing and requested surgery or an outside consultation. (Doc. 60-1 at 23.) Dr. Shearing denied the request. (*Id.*) Plaintiff also requested an extension of his low gallery permit. (*Id.*) Dr. Shearing denied the request for an extension, and according to Plaintiff, attempted to conceal his identity by refusing to disclose his name, and yelled at Plaintiff to leave his office. (*Id.*) Dr. Shearing diagnosed chronic right ankle pain and found no objective injury and no need for an outside consultation or surgical intervention. (Doc. 60-3 at 15.) He concluded that the right ankle had healed with residual chronic pain, possibly caused by nerve damage, and planned to treat the pain with medication. (Doc. 102-4 at 8). He again found no medical need for an MRI or physical therapy.

---

[2] Although Defendant Shearing ordered an X-ray of the right ankle, the radiologist report indicates an X-ray of the left ankle.

(*Id.* at 12.)  Dr. Shearing reviewed and agreed with Plaintiff's permits at that time, which included the one-year permits for low bunk and slow walk and the six-month permit for low gallery.  (*Id.* at 9; Doc. 103-1.)

Defendant Wexford considers cost as a factor during peer reviews of physicians and their treatment of inmates.  (Doc. 102-3 at 11.)  Primary care providers must submit more costly medical procedures for further approval from the corporate office.  (*Id.* at 13.)  Wexford also has a policy on physical therapy as follows:

<u>Physical Therapy</u>

> This area of service is easily and often abused.  The patients tend to use the sub maximal effort, and will continue to use the service for extended periods of time with poor outcomes.  Except for the early phases of post-operative healing, and in paralytic cases, passive exercise has little role.  The exercise programs should be designed to be vigorous (depending on the diagnosis) and demanding.  The initial exercise periods should be monitored with encouragement by medical staff to complete the scheduled sets of activity until designing a specified home exercise program (HEP).

(*Id.* at 66.)

**DISCUSSION**

Under *F.R.C.P.* 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party."  *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).  Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party."  *Id.*

The Eighth Amendment protects inmates from cruel and unusual punishment.  U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010).  Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or

safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

To establish deliberate indifference to a medical condition, an inmate must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Whether an injury is serious enough is a very fact specific inquiry – seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

### *Dr. John Dr. Shepherd*

Dr. Shepherd saw Plaintiff on three occasions between August and October 2012. In treating Plaintiff's right ankle, he ordered three sets of X-rays, arch supports, and permits to accommodate Plaintiff. He also prescribed pain medication.

Plaintiff contends that Dr. Shepherd acted with deliberate indifference on August 24, 2012, because he did not confirm whether Plaintiff received the low bunk permit and he merely told Plaintiff to tighten the laces on his boots. In support, Plaintiff relies on cases suggesting that the failure to order X-rays and a splint for a suspected fracture and failing to order pain medication in a timely manner constitute deliberate indifference. *See Conley v. Birch*, 796 F.3d 742, 748 (7th Cir. 2015); *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015).

Here, Dr. Shepherd assumed that a nurse would facilitate his order regarding the permits. While he could have been more diligent by confirming that his order had been carried out, his failure to do so does not constitute deliberate indifference. Also, according to Dr. Shepherd, he recommended that Plaintiff lace up his ankle high leather boots tightly as "an equivalent and substitute to an ankle brace or other support device." Again, while Dr. Shepherd's approach leaves something to be desired, it does not amount to deliberate indifference. During this examination, which occurred one day after Plaintiff's initial fall, Dr. Shepherd also prescribed pain medication and ordered X-rays of Plaintiff's right ankle. Taken together, this evidence fails to establish that, on August 24, 2012, Dr. Shepherd knew of a substantial risk of serious harm to Plaintiff and deliberately disregarded it.

Plaintiff further argues that Dr. Shepherd acted with deliberate indifference on October 19, 2012, by ordering arch supports rather than MRI scans or physical therapy. He asserts that Dr. Shepherd has referred other patients with ankle sprains to physical therapy and that Wexford

7

policies discourage physical therapy. However, beyond Plaintiff's testimony, the record contains no evidence regarding Dr. Shepherd's treatment of other patients and no indication that Dr. Shepherd considered the Wexford policy in deciding not to refer Plaintiff for physical therapy. As such the record does not suggest that Dr. Shepherd acted with deliberate indifference on October 19, 2012.

Because the record is insufficient to support a conclusion that Dr. Shepherd acted with deliberate indifference in treating Plaintiff's right ankle, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference against Defendant Dr. John Shepherd.

## *Dr. Robert Shearing*

Dr. Shearing saw Plaintiff in November 2012 and twice in June 2013. In treating Plaintiff's right ankle, he reviewed X-rays and prescribed pain medication. Plaintiff maintains that Dr. Shearing's refusal to order referrals for physical therapy, an orthopedic consultation, an MRI scan or other forms of treatment amounts to deliberate indifference. Dr. Shearing testified that he diagnosed Plaintiff with chronic ankle pain, possibly caused by nerve damage, and decided to treat the pain with medication in accordance with his medical judgment. He further testified that he did not find a medical need for physical therapy or an MRI scan.

Plaintiff also notes that, following his transfer to Pinckneyville Correctional Center, he received physical therapy, an ankle brace and specialized shoes. However, an alternative treatment plan recommended by a different physician in 2016 does not establish that Dr. Shearing deliberately disregarded Plaintiff's medical needs three years earlier.

Plaintiff also argues that Dr. Shearing acted with deliberate indifference by refusing to renew his permits, which caused Plaintiff to miss meals due to his inability to walk at a normal

8

pace. The record reflects that, at the time of Dr. Shearing's final examination of Plaintiff, Plaintiff had permits for low bunk and slow walk through September 2013, but his permit for low gallery would expire in July 2013. The record does not contain Dr. Shearing's reasoning for not renewing the low gallery permit, but there is no evidence to suggest that he knew that his failure to renew the low gallery permit would result in Plaintiff missing meals or that the low gallery permit represented a serious medical need. Moreover, Plaintiff relies on his testimony relating to a delay in receiving permits for low bunk and slow walk that occurred prior to Dr. Shearing's arrival at Menard Correctional Center. (Doc. 60-1 at 18; Doc. 101 at 11.)

There is simply insufficient evidence from which a jury could reasonably conclude that Dr. Shearing acted with deliberate indifference in treating Plaintiff's right ankle. Therefore, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference against Dr. Shearing.

### *Wexford*

Plaintiff alleges that Wexford violated his Eighth Amendment rights by implementing policies that allowed consideration of the costs of treatment and discouraged physical therapy. A corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, corporate liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Id.* The policy must be the "moving force behind the deprivation of his constitutional rights." *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013).

As set forth above, the evidence does not support a conclusion that Plaintiff suffered a constitutional deprivation. Additionally, although consideration of cost absent medical judgment is not permitted, cost is a permissible factor for consideration when making treatment decisions. *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). Nevertheless, there is no evidence that Drs. Shepherd and Shearing took Wexford policies regarding costs or physical therapy into consideration in providing treatment to Plaintiff. Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference against Defendant Wexford.[3]

### *Remaining Defendants*

In the Screening Order, the Court added Kimberly Butler, in her capacity as the Warden of Menard Correctional Center, as a defendant for purposes of injunctive relief. (Doc. 6.) Plaintiff has since transferred from Menard to Pinckneyville Correctional Center and does not take issue with his medical treatment at Pinckneyville. (Doc. 83; Doc. 101 at 11.) Thus, Plaintiff's claim for injunctive relief against Defendant Kimberly Butler must be dismissed.

As a final matter, Defendant John Doe remains in the case. In the Screening Order, Plaintiff was granted the opportunity to amend the complaint to identify the John Doe Defendant, but has not done so. (Doc. 6.) Accordingly, Plaintiff's claim (Count 1) against Defendant John Doe shall also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Wexford Health Sources, Inc., John Shepherd and Robert Shearing's Motion for Summary Judgment (Doc. 59) is **GRANTED**. Further,

---

[3] Defendants also move for summary judgment on the basis of qualified immunity. Because the Court finds that the record contains insufficient evidence to support Plaintiff's claims, the Court need not consider whether Defendants are entitled to qualified immunity.

Defendants John Doe and Kimberly Butler are **DISMISSED** from this action.  As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment against Plaintiff Francisco Akins and in favor of Defendants Wexford Health Services, Inc., John Shepherd, and Robert Shearing, and to close this case.

**IT IS SO ORDERED.**

**DATED:  April 12, 2017**

**s/ Staci M. Yandle**<br>**STACI M. YANDLE**<br>**United States District Judge**